UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| PERRY & PERRY BUILDERS, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | No. 6:25-CV-00106-LS |
| § | |
| COWBELL CYBER, INC. and § | |
| OBSIDIAN SPECIALTY INSURANCE § | |
| COMPANY, INC., § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Perry & Perry Builders, Inc., ("Perry") sues Defendants Cowbell Cyber, Inc., and Obsidian Specialty Insurance Company, its insurers, for breach of contract and Texas Insurance Code violations.[1] The parties filed cross-motions for summary judgment[2] and stipulate that the Court's interpretation of the subject insurance policy will control.[3] For the following reasons, the Court grants Defendants' motion for summary judgment and denies Plaintiff's motion for summary judgment.

**The Facts**.

On December 19, 2023, Perry received an email purporting to be from its steel vendor, Alamo Structural Steel, seeking Perry's payment of Alamo Steel's outstanding invoices into a particular Chase bank account. The next day, complying with the payment instructions, Perry paid $874,863.70 into the Chase account, which turned out to be controlled by fraudsters. The

---

[1] ECF No. 14.
[2] ECF Nos. 15, 16.
[3] ECF No. 24 at 1.

fraudsters, not Alamo Steel, sent Perry the fraudulent payment instructions. Defendants, who are Perry's insurers, paid Perry the $250,000.00 policy limit for the loss. Perry sues Defendants on a theory that it is entitled to a second $250,000.00 insurance payment because its business manager separated the $874,863.70 payment into two separate electronic transfers. The transfers, however, were one minute apart and corresponded to two legitimate and outstanding Alamo Steel invoices.

**The Law.**

"Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[4] A genuine dispute of material fact exists if the dispute "might affect the outcome of the suit" and "a reasonable jury could return a verdict for the nonmoving party."[5] However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[6] The Court "may not make credibility determinations or weigh the evidence" when ruling on a summary judgment motion[7] and reviews all facts in the light most favorable to the nonmoving party.[8] "Cross-motions [for summary judgment] must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."[9]

"In Texas, '[t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract

---

[4] *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[6] *Id.* at 247-48.
[7] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).
[8] *First Colony Life Ins. v. Sanford*, 555 F.3d 177, 180 (5th Cir. 2009).
[9] *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004).

by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'"[10] Insurance policies follow the same rules of construction and interpretation as other contracts.[11] "When a contract's meaning is disputed, [a court's] primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument."[12] The court should "peruse the complete document to understand, harmonize, and effectuate all its provisions."[13] All provisions "must be considered in the context of the instrument as a whole" and words should be given "their plain, common, or generally accepted meaning" unless they are specifically defined in the contract.[14] Any "exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured."[15]

**Analysis.**

Perry argues that Defendants owe it another $250,000.00 payment because its business manager separated the $874,863.70 payment to "Alamo Steel" into two separate electronic transfers. It argues these two electronic transfers, $272,997.45 and $601,866.25, constitute two separate "claims" because Section I.B.(5) of the policy provides that "Each Claim Limit of Liability" for "Cyber Crime Loss[es]" is $250,000.00.[16] The Court notes, however, that Perry volitionally separated its intended $874,863.70 payment to Alamo Steel into two electronic transfers to correspond to the amounts owed on two separate Alamo Steel invoices.[17] The Court also notes that the electronic transfers occurred within one minute of each other.[18] Perry is hard-

---

[10] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).
[11] *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).
[12] *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018).
[13] *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 610 (5th Cir. 2000) (quoting *Questa Energy Corp. v. Vantage Point Energy, Inc.*, 887 S.W.2d 217, 221 (Tex. App.—Amarillo 1994, writ denied)).
[14] *Plains Expl. & Produc. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).
[15] *Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*, 99 F.4th 821, 827 (5th Cir. 2024) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).
[16] ECF No. 13-1 at 5.
[17] ECF No. 13-2 at 6 ("I just completed two ACH transactions. One for the remainder of Pa 1 in the amount of $272,997.45 and then another for PA 2 $601,886.25.").
[18] ECF No. 13-3 at 1, 3.

pressed to make the argument that the number of "claims" or "losses" that it can assert under the policy depends on its own bookkeeping choices. By that logic, if Perry made the bookkeeping choice to pay Alamo Steel the $874,863.70 it owed in four electronic transfers of $200,000.00 and one of $74,863.70, Perry could claim the full $874,863.70 if those five electronic transfers matched five Alamo Steel invoices in corresponding amounts.

Defendant's summary judgment motion has the better argument in that it relies on the following endorsement in the subject insurance policy:

> The Limits of Liability set forth in Item 5. of the Declarations is the maximum amount the **Insurer** will be liable to pay for all **Claims**, **First Party Loss**, **First Party Expense**, and **Liability Expense** under each Insuring Agreement, regardless of the number of **Claims**, **Privacy Incidents**, **Network Security Incidents**, **Cyber Crime Incidents**, **Media Incidents**, or **Insureds**. Such Limits of Liability are part of, and not in addition to, the Aggregate Limit of Liability.[19]

"Item 5" in this endorsement is the provision on which Perry relies, limiting "Each Claim Limit of Liability" for "Cyber Crime Losse[es]" to $250,000.00. The next clause of the sentence refers to different categories of loss: "Claims," "First Party Loss," "First Party Expense," and "Liability Expense,"[20] all of which are defined in the policy. Relevant here, a "Claim" refers to a third-party's claims *against* Perry, including written monetary demands, lawsuits, or arbitration demands.[21] There are no third-party claims against Perry at issue in this lawsuit. Of the remaining categories of loss, "First Party Loss," "First Party Expense," and "Liability Expense," Perry concedes in its summary judgment motion that the loss at issue is a "First Party Loss" under the policy.[22]

---

[19] ECF No. 13-1 at 47 (bold in original).
[20] *Id*.
[21] *Id*. at 16.
[22] ECF No. 16 at 3 ("Accordingly…the two payments…are therefore both covered losses for reimbursement as First Party Losses…").

4

The remainder of the provision lists the various causes of loss: "Claims," "Privacy Incidents," "Network Security Incidents," "Cybercrime Incidents," and "Media Incidents."[23] Perry's loss did not result from a "Claim" because, as discussed above, no third party made a claim against Perry. Of the remaining listed loss causes, the parties stipulate this was a "Cyber Crime Incident,"[24] and the parties also stipulate that a "Cyber Crime Incident" is a "Cyber Event."[25] Finally, under the policy, a "First Party Loss" is a "Cyber Crime Loss."[26] Harmonizing, then, only the relevant terms, provisions, and definitions, the endorsement on which Defendants rely would read:

> [$250,000.00][27] is the maximum amount the Insurer will be liable to pay for all [Cyber Crime Incidents/Cyber Events] under each Insuring Agreement, *regardless of the number of [Cyber Crime Incidents/Cyber Events]*.

In other words, the policy endorsement caps at $250,000.00 what Defendants must pay for *all* of Perry's cyber losses during the policy period, regardless of the number and value of each such loss. As Defendants paid Perry the $250,000.00 policy limit, Defendants have no further liability and are entitled to summary judgment on Plaintiff's claims for breach of contract and Texas Insurance Code violations. And, obviously, as Plaintiff is entitled to nothing more, its summary judgment motion must be denied.

---

[23] ECF No. 13-1 at 47. The final category at issue refers to "Insureds," but Perry Builders is the only "Insured" in this lawsuit.

[24] ECF No. 13 at 3 ("The [fraudsters' communication] and resulting theft committed against Perry & Perry constitute a **Social Engineering Attack**, as that term is defined by the Policy. The Policy's definition of **Cyber Crime Incident** includes a **Social Engineering Attack**, and the Policy's definition of **Cyber Event** includes a **Cyber Crime Incident**.") (bold in original).

[25] *Id*.

[26] ECF No. 13-1 at 14-15 (**First Party Loss** means…**Cyber Crime Loss**…) (bold in original).

[27] *Id*. at 5 ("Each Claim Limit of Liability" for "Cyber Crime Loss[es]" is "$250,000.00").

5

**Conclusion.**

The Court grants Defendants' motion for summary judgment [Doc. No. 15] and denies Plaintiff's motion for summary judgment [Doc. No. 16].

**SO ORDERED**.

**SIGNED** and **ENTERED** on March 9, 2026.

                                                  **LEON SCHYDLOWER**
                                                  **UNITED STATES DISTRICT JUDGE**